UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TRANSCONTINENTAL INSURANCE
COMPANY,

        Plaintiff,

v.

BARLETTA ENGINEERING
CORPORATION,

        Defendant.

CIVIL ACTION NO. 04-12486 NG

**ANSWER AND COUNTERCLAIM OF BARLETTA ENGINEERING CORPORATION**

       Now comes the defendant/plaintiff-in-counterclaim, Barletta Engineering Corporation ("Barletta"), and states as its Answer and Counterclaim to the plaintiff's Complaint for Declaratory Judgment as follows:

**PARTIES**

       1.    Barletta is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 1 of the Complaint. Upon information and belief, Barletta admits the allegations contained in the second sentence of paragraph 1 of the Complaint.

       2.    Barletta admits the allegations contained in paragraph 2 of the Complaint, but states that is usual place of business is in Canton, Massachusetts.

**JURISDICTION**

       3.    Paragraph 3 of the Complaint states a conclusion of law to which no response is required.

4. Barletta admits the allegations contained in paragraph 4 of the Complaint.

5. Based upon a letter from Transcontinental dated November 23, 2004 and the allegations contained in Transcontinental's Complaint for Declaratory Judgment, Barletta admits the allegations contained in paragraph 5 of the Complaint.

## ALLEGATIONS

6. Barletta admits the allegations contained in paragraph 6 of the Complaint

7. Barletta admits the allegations contained in paragraph 7 of the Complaint.

8. Barletta admits that the Lafayette School was completed by October 25, 1999, and states that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in the first sentence of paragraph 8 of the Complaint. Barletta admits that the building allegedly suffered from water intrusion as of early spring 2000, and that Everett undertook repairs to the school in 2003, which reportedly have been completed.

9. Barletta admits that Everett filed a lawsuit against Barletta and Firemen's Fund Insurance Company on or about October 24, 2000, and Barletta states that Everett's Complaint speaks for itself. In response to the allegations contained in the second sentence of paragraph 9 of the Complaint, Barletta states that Everett seeks damages far in excess of $500,000 in Middlesex Superior Court, Civil Action No. 00-4884.

10. In response to the allegations contained in the first five sentences of paragraph 10 of the Complaint, Barletta states that Everett's Second Amended Complaint is a written document which speaks for itself. Barletta admits the allegations contained in the last sentence in paragraph 10 of the Complaint.

11. Barletta admits the allegations contained in paragraph 11 of the Complaint and further answering, states that the policies are written documents which speak for themselves.

12.     Barletta admits the allegations contained in the first sentence of paragraph 12 of the Complaint and, further answering, states that Transcontinental's November 1, 2001 letter is a written document which speaks for itself.  In response to the second sentence in paragraph 12 of the Complaint, Barletta admits that it received Transcontinental's November 12, 2003 letter, which constitutes a withdrawal of Transcontinental's November 1, 2001 reservation of rights letter, but Barletta denies that Transcontinental's November 12, 2003 letter related exclusively to the primary policy.  In response to the third sentence in paragraph 12 of the Complaint, Barletta admits that it received Transcontinental's November 23, 2004 letter.  With respect to the remaining allegations contained in paragraph 12 of the Complaint, Barletta states that Transcontinental's November 23, 2004 letter is a written document which speaks for itself.

13.     The Transcontinental excess policy is a written document which speaks for itself.

## COUNT I

14.     Barletta incorporates herein by reference paragraphs 1 through 13 above.

15.     Barletta denies the allegations contained in the first sentence of paragraph 15 of the Complaint insofar as Everett's claims against Barletta for property damage that allegedly occurred at the Lafayette School arise from the performance of work by Barletta and Barletta's subcontractors and their subcontractors, as well as design deficiencies associated with the plans and specifications for the project.  Barletta denies the remaining allegations contained in paragraph 15 of the Complaint.

16.     Barletta denies the allegations contained in paragraph 16 of the Complaint.

17.     Barletta denies the allegations contained in paragraph 17 of the Complaint.

18.     Barletta denies the allegations contained in paragraph 18 of the Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The plaintiff's claims are barred because the plaintiff has acted in bad faith.

### SECOND AFIRMATIVE DEFENSE

The plaintiff's claims are barred based on the doctrine of unclean hands.

### THIRD AFFIRMATIVE DEFENSE

The plaintiff's claims are barred by the doctrine of estoppel.

### FOURTH AFFIRMATIVE DEFENSE

The plaintiff's claims are barred by the doctrine of waiver.

### FIFTH AFFIRMATIVE DEFENSE

The plaintiff's claims are barred by the doctrine of laches.

### SIXTH AFFIRMATIVE DEFENSE

The plaintiff is not entitled to judgment as requested, because the plaintiff has violated G.L. c. 93A, §2 and G.L. c. 176D, §3.

WHEREFORE, Barletta Engineering Corporation respectfully requests that the Court enter judgment in Barletta's favor on all claims asserted by Transcontinental Insurance Company and that the Court award Barletta its costs, any applicable interest, and attorney's fees.

## COUNTERCLAIM

Now comes Barletta and for its counterclaim, states as follows:

1. The plaintiff-in-counterclaim, Barletta, is a Massachusetts corporation with a usual place of business in Canton, Massachusetts.

2. Upon information and belief, the defendant-in-counterclaim, Transcontinental, is a New York corporation with a principal place of business in Chicago, Illinois. Transcontinental is authorized to transact business in the Commonwealth of Massachusetts as a liability insurer.

3. The City of Everett filed a lawsuit against Barletta in Middlesex Superior Court, Civil Action No. 00-4884 ("the Lafayette Lawsuit"), in which Everett asserted claims for property damage and other claims arising from the Lafayette School construction project ("the Project"). At the inception of the Lafayette Lawsuit, Barletta retained counsel to defend the claims asserted by Everett.

4. Barletta was the general contractor on the Project and Barletta subcontracted portions of the work to various subcontractors.

5. In June/July 2001, Barletta submitted a claim to Transcontinental requesting defense and indemnification in the Lafayette Lawsuit under Policy No. CO 1080002674 ("the Primary Policy") issued by Transcontinental.

6. In or about June 2001, Barletta sent letters to various insurance agencies/companies who insured Barletta's subcontractors whose work was implicated by Everett's claims on the Project. Barletta notified the insurers of Barletta's claims against the insured subcontractors and of Barletta's claim to coverage as an additional insured under policies issued for the subcontractors.

7. On November 1, 2001, Transcontinental wrote to Barletta and stated that it would defend Barletta under a reservation of rights. In the November 1, 2001 letter, Transcontinental reserved the right to (1) deny coverage for defense or indemnity at any time, (2) refuse to make any settlement offers or satisfy any judgments for claims not covered by the policy, (3) have a court determine whether or not Transcontinental would be obligated to indemnify Barletta in the Lafayette Lawsuit, (4) withdraw the defense of Barletta in the event the Lafayette Lawsuit did not present a claim potentially covered under the Primary Policy, and (5) seek reimbursement of attorney's fees and costs incurred by Transcontinental in defending claims in the Lafayette Lawsuit and all indemnity payments that Transcontinental might make to settle those claims or satisfy any judgments on those claims.

8. In or around early November 2001, Transcontinental informed Willis of Massachusetts ("Willis") that Transcontinental intended to retain and appoint a lawyer to represent Barletta in the Lafayette Lawsuit. Willis informed Barletta of Transcontinental's intention to appoint counsel to represent Barletta.

9. On November 12, 2001, Barletta wrote to Transcontinental and stated that in light of Transcontinental's reservation of rights, Barletta would not consent to Transcontinental appointing counsel to represent Barletta in the lawsuit and that, in accordance with applicable law, Barletta required Transcontinental to pay the attorney's fees and expenses charged by counsel selected by Barletta. Thereafter, Barletta's chosen counsel continued to represent Barletta for purposes of defending the claims asserted by Everett and pursuing Barletta's third party claims, and Transcontinental paid the fees and expenses charged by Barletta's counsel.

10. On November 21, 2001, Barletta (through Willis) submitted a claim to Transcontinental for coverage concerning the Lafayette Lawsuit under Policy No. CUP1080002691 ("the Umbrella Policy") issued by Transcontinental.

11. From November 2001, through November 12, 2003, Barletta defended Everett's claims and pursued third party claims with its chosen counsel at the expense of Transcontinental. During this two year period, Barletta kept Transcontinental's various claims specialists apprised of the status of and developments regarding the Lafayette Lawsuit.

12. In March 2003, Transcontinental requested that Barletta: (1) obtain from an expert a cost estimate for repairs to the Lafayette School; (2) obtain from an expert an apportionment of responsibility between workmanship defects and design defects, and an apportionment of responsibility among Barletta's subcontractors on the Project, and (3) attempt to convince all parties to participate in a global mediation.

13. Insofar as Transcontinental and/or its affiliates insured several subcontractors and the architect for the Project (who was and is a party in the Lafayette Lawsuit), Transcontinental's Claims Specialist indicated that he would speak with claims representatives for the architect and those subcontractors who were/are insured by Transcontinental or its affiliates, in an effort to set up a mediation.

14. On September 17, 2003, Barletta provided a comprehensive written status report to Transcontinental, in which Transcontinental was apprised, among other things, that Everett had entered into a contract in the amount of $3,363,503 to perform repairs to the Project, and that Everett's expert had indicated that Everett issued an additional $900,000 of change orders as part of the repairs.

15. On November 12, 2003, Transcontinental wrote to Barletta stating that Transcontinental was withdrawing the reservation of rights letter that it sent to Barletta on November 1, 2001, and that Transcontinental would thereafter defend Barletta with no reservation of rights. Transcontinental directed Barletta's counsel to provide their file to Curley & Curley, a firm selected by Transcontinental.

16. On November 21, 2003, Barletta wrote to Transcontinental and stated in part:

> I acknowledge receipt of your letter dated November 12, 2003, withdrawing CNA/Transcontinental's Reservation of Rights letter dated November 1, 2001. We understand that CNA/Transcontinental will defend and indemnify Barletta Engineering Corporation from and against all claims asserted against Barletta in the lawsuit. We understand that CNA/Transcontinental will prosecute Barletta's third party claims against the project architect and the subcontractors in an effort to impose liability upon those third party defendants for damages the City of Everett seeks to recover from Barletta. In reliance upon your November 12 letter, Barletta will relinquish control of its defense to CNA/Transcontinental and counsel identified in your letter, Curley & Curley.

17. Since November 12, 2003, Barletta and its attorneys have responded to various inquiries and requests from Curley & Curley in connection with Curley & Curley's defense of Barletta in the Lafayette Lawsuit. In reliance upon Transcontinental's representations and conduct, including the November 12, 2003 letter, Barletta's counsel has not participated in the defense of Barletta in the Lafayette Lawsuit.

18. In reliance upon Transcontinental's representations and conduct, including November 12, 2003 letter, Barletta has relied exclusively on Transcontinental and Curley & Curley to pursue Barletta's rights against subcontractors on the Project, and Barletta's rights under insurance policies issued to Barletta's subcontractors and pursuant to which Barletta was named as an additional insured.

19.    At all times since November 12, 2003, Barletta understood that Transcontinental was providing defense and indemnity for all of Everett's claims under the Primary Policy and would provide indemnity under the Umbrella Policy, without reservation, and that neither Barletta nor Barletta's surety would be subject to any exposure for Everett's claims insofar as Transcontinental provided $17 million worth of coverage for those claims between the Primary and Umbrella Policies.

20.    As of early November 2004, a mediation was scheduled for December 3, 13 and 14, 2004, to encompass claims in the Lafayette Lawsuit. The scheduled mediation was also to include claims in another lawsuit involving Barletta and Everett concerning Barletta's construction of the Lewis School in Everett ("the Lewis Lawsuit").

21.    Barletta filed the complaint against Everett and the project architect in the Lewis Lawsuit, seeking a remaining unpaid contract balance, compensation for extra or out-of-scope work on the Lewis School, delay damages, and compensation for the fees of its attorneys, construction consultants and expert witnesses.

22.    Throughout a lengthy effort to make arrangements for the mediation, Transcontinental was aware that the mediation would include the claims in the Lafayette Lawsuit and the claims in the Lewis Lawsuit.

23.    Throughout the lengthy process of preparing for the mediation, Transcontinental was aware that Barletta was incurring legal fees and expert witness fees to prepare for the mediation in connection with the Lewis Lawsuit.

24.    On November 23, 2004, Transcontinental sent a letter to Barletta in which Transcontinental purported to provide its "supplemental coverage position" with respect to the Lafayette Lawsuit. In the November 23, 2004 letter, Transcontinental acknowledged insuring

Barletta under both the Primary Policy and the Umbrella Policy, but stated that it had "determined that it has no duty to defend or to indemnify under both the primary and umbrella policies in connection with the claims alleged by the City of Everett against Barletta in the above-captioned matter, and therefore must disclaim any coverage under the policies."

25.   On November 24, 2004, Transcontinental filed the instant declaratory judgment action against Barletta.

## COUNT I
### (Declaratory Judgment)

26.   Barletta incorporates herein by reference paragraphs 1 through 25 above.

27.   Barletta maintains that it is entitled to coverage for Everett's claims in the Lafayette Lawsuit for property damage pursuant to the terms of the Primary and Umbrella Policies.

28.   Pursuant to Transcontinental's November 23, 2004 letter, Transcontinental maintains that neither the Primary nor the Umbrella Policy provides any coverage to Barletta for the claims asserted in the Lafayette Lawsuit.

29.   An actual controversy exists with regard to Barletta's rights to coverage under the terms of the Primary and Umbrella Policies.

## COUNT II
### (Estoppel)

30.   Barletta incorporates herein by reference paragraphs 1 through 29 above.

31.   Despite being placed on notice of Barletta's claim under the Umbrella Policy on November 21, 2001, and despite financing and ultimately controlling the defense of Barletta on claims that exceeded the limits in Barletta's Primary Policy, Transcontinental waited until the

eve of a mediation and one week before the expiration of the discovery deadline in the Lafayette Lawsuit to disclaim coverage for Barletta under the Umbrella Policy.

33. Based upon (and without limitation): (1)Transcontinental's failure to issue a timely disclaimer of coverage under the Umbrella Policy; (2) Transcontinental's affirmative withdrawal of its reservation of rights regarding the Lafayette Lawsuit after having received written notification of Barletta's claim for coverage under the Umbrella Policy; (3) Transcontinental's acceptance of Barletta's November 21, 2003 letter without reservation, qualification or objection; and (4) Transcontinental's defense of Barletta and preparation for mediation concerning the Lafayette Lawsuit with full awareness that Everett's claims far exceeded the limits of the Primary Policy, Barletta reasonably believed that Transcontinental provided coverage for Barletta pursuant to the limits of the Umbrella Policy to defend (if necessary) and indemnify Barletta from and against Everett's claims in the Lafayette Lawsuit.

33. In reliance upon the facts, representations and conduct described above (among other things), Barletta did not have its own counsel participate in its defense of Everett's claims or the pursuit of Barletta's third party claims in the Lafayette Lawsuit; Barletta did not pursue its rights under insurance policies issued to Barletta's subcontractors; and Barletta agreed to and helped to arrange a mediation to include the claims in the Lafayette Lawsuit and the claims in the Lewis Lawsuit.

34. Barletta's reliance upon the representations and conduct of Transcontinental has been reasonable and Barletta has been prejudiced by Transcontinental's conduct, such that Transcontinental is estopped to deny coverage under the Umbrella Policy.

### COUNT III
**(G.L. c. 93A)**

35. Barletta incorporates herein by reference paragraphs 1 through 34 above and paragraphs 46 through 48 below.

36. At all times relevant, Barletta and Transcontinental were each engaged in trade or commerce.

37. The conduct that is the subject of this dispute occurred primarily and substantially in the Commonwealth of Massachusetts.

38. A liability insurer in Massachusetts is under a duty, among other things, to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies; to affirm or deny coverage of claims within a reasonable time after such claims have been submitted; and to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim.

39. Barletta submitted its claim under the Umbrella Policy to Transcontinental on November 21, 2001, and thereafter continued to deal with Transcontinental relative to the defense of the Lafayette Lawsuit, believing that Transcontinental was taking consistent positions regarding coverage under the Primary and Umbrella Policies, the terms of which are substantially similar with regard to the issues identified with Transcontinental's Complaint for Declaratory Judgment.

40. Prior to November 23, 2004, Transcontinental never notified Barletta that Transcontinental perceived any distinction in the scope of coverage provided by the Primary and Umbrella Policies.

41. In the event Transcontinental maintains that its dealings with Barletta between November 21, 2001 and November 23, 2004 were not related to the Umbrella Policy, then

Transcontinental failed to satisfy its duty to acknowledge and reasonably promptly upon communications from Barletta with respect to the claim arising under the Umbrella Policy.

42. Transcontinental's conduct as described herein, including its November 23, 2004 disclaimer of Barletta's claim, constitutes unfair or deceptive acts or practices in the conduct of trade or commerce prohibited by G.L. c. 93A, §2, as a result of which Barletta has suffered and continues to suffer damages.

43. Transcontinental's violation of G.L. c. 93A, §2 was knowing and/or willful.

44. Barletta is entitled to recover from Transcontinental pursuant to G.L. c. 93A, §11.

## COUNT IV
**(Breach of Contract & Covenant of Good Faith and Fair Dealing)**

45. Barletta incorporates herein by reference paragraph 1 through 45 above.

46. The Primary and Umbrella Policies carried with them an implied covenant of good faith and fair dealing.

47. Transcontinental's conduct as described above constitutes a breach of the Primary Umbrella Policies and a violation of the covenant of good faith and fair dealing implied in those policies.

48. Barletta has suffered and will suffer damages as a result of Transcontinental's breach.

WHEREFORE, Barletta respectfully requests that the Court:

(1) Declare that Barletta is entitled to coverage under the Primary and Umbrella Policies;

(2) Declare that Barletta is entitled to coverage for more than one occurrence, i.e., in the aggregate amount of $2 million, under the Primary Policy;

(3) Award Barletta its attorney's fees and expenses this action as allowed by Massachusetts law;

(4)    Assess damages against Transcontinental and award Barletta such damages, doubled or trebled pursuant to G.L. c. 93A, plus interest, costs and attorney's fees; and

(5)    Grant Barletta such other relief as it deems fair and equitable.

BARLETTA CLAIMS A TRIAL BY JURY AS TO ALL CLAIMS AND COUNTERCLAIMS FOR WHICH A JURY TRIAL IS APPROPRIATE.

Respectfully submitted,

BARLETTA ENGINEERING CORPORATION

By its attorneys,

/s/ Thomas H. Hayman
Bert J. Capone (BBO#072880)
Thomas H. Hayman (BBO#557279)
Eric H. Loeffler (BBO#641289)
CETRULO & CAPONE LLP
Two Seaport Lane, 10th Floor
Boston, MA 02210
Tel: (617) 217-5500
Fax: (617) 217-5200

Dated: December 28, 2004

## CERTIFICATE OF SERVICE

  I, Thomas H. Hayman do hereby certify that on this 28th day of December, 2004, I served a true and accurate copy of the foregoing document to counsel of record by first class mail as follows:

  Gregory P. Deschenes, Esq.
  John S. Stadler, Esq.
  Michael L. Cornell, Esq.
  Nixon Peabody LLP
  100 Summer Street
  Boston, MA 02110-2131

            /s/ Thomas H. Hayman
            Thomas H. Hayman, BBO #557279

01466-0010
353192v1